OPINION OF THE COURT
Philip S. Straniere, J.
To disclose or not to disclose; that is the question: whether *652 ‘tis nobler to complete the form, suffer possible litigation and expose one’s fortune, or keepeth quiet and forfeit the $500?[1]
Plaintiffs, Monte Malach and Barbara Malach, commenced this action against the defendants, Cheng Lung Chuang and Pei Fang Chuang, alleging that the defendants improperly completed the real estate disclosure form required by article 14 of the Real Property Law, causing the plaintiffs to suffer damages. A trial was held on November 7, 2002.
Defendants were the owners of certain real property known as 24 Townley Avenue, Staten Island, New York, to which they conveyed title to the plaintiffs on April 8, 2002. On March 6, 2002 the defendants completed and signed the “Property Condition Disclosure Statement” (disclosure) required by Real Property Law § 462. The plaintiffs acknowledged receipt of the disclosure on March 14, 2002. Sometime in March 2002, presumably after the date of the disclosure, the parties executed a standard contract of sale. On February 23, 2002 plaintiffs hired a third party to conduct a structural inspection of the premises. After obtaining title and entering into possession of the premises, the plaintiffs hired a general contractor to make some repairs to the premises. One of the repairs included the removal of a deck which surrounded a swimming pool. At the trial plaintiffs’ witnesses testified that the deck was not in good condition and needed replacement. An adjustment had been made in the purchase price to reflect that condition. When the deck was in the process of being removed by plaintiffs’ contractor, it was noticed that the swimming pool was also damaged in that the base of the pool had “rot.” The deterioration was around the main supports and body of the pool, and according to the contractor, if left untreated would cause the pool to collapse. The contractor removed the liner of the pool and found new patches around the bottom of the pool placed there in an attempt to prevent the liner from pushing out. The contractor testified that once the deck was removed the rot was visible but that it could also be seen if you looked under the deck. He pointed out that this was an in ground pool that was placed mostly above ground when it had been installed. The contractor stated that the pool began to collapse while he was doing this work and it had to be removed. He was not hired to replace it.
*653 Plaintiffs have not brought this action alleging a breach of the terms of the contract of sale. The gravamen of their complaint is that the defendants improperly completed the disclosure statement and that in reliance on that disclosure statement, plaintiffs entered into a contract and accepted title to the premises. In particular, plaintiffs allege that the defendants answered question 20 on the form in a manner designed to deceive the plaintiffs. Question 20 appears in the section labeled “Structural” and asks, “Is there any rot or water damage to the structure or structures?” The defendants answered this question “Unkn,” the abbreviation for “Unknown” on the disclosure.
Property Condition Disclosure in the Sale of Residential Real Property Act:
Effective March 1, 2002 in the State of New York, in regard to the sale of residential real property improved by a one- to four-family dwelling unit “every seller of residential real property pursuant to a real estate purchase contract shall complete and sign a property condition disclosure statement as prescribed by subdivision two of this section and cause it, or a copy thereof, to be delivered to a buyer or buyer’s agent prior to the signing by the buyer of a binding contract of sale. A copy of the property condition disclosure statement containing the signatures of both seller and buyer shall be attached to the real property contract” (Real Property Law § 462 [1]).
Real Property Law § 462 (2) then sets forth the contents of the disclosure form. There are 48 questions to be answered by the seller either “Yes,” “No,” “Unkn”. or “NA.” In the body of the form the seller is instructed to “(a) answer all questions BASED UPON YOUR ACTUAL KNOWLEDGE * * * IF SOME ITEMS DO NOT APPLY TO YOUR PROPERTY, CHECK ‘na’ (nON-APPLICABLE) . IF YOU DO NOT KNOW THE ANSWER CHECK ‘UNKN’ (UNKNOWN).” The statute defines “knowledge” as “only actual knowledge of a defect or condition on the part of the seller of residential real property” (Real Property Law § 461 [3]).
Real Property Law § 465 sets forth the remedy available to a buyer if the seller fails to comply with the law. It states: “1. In the event a seller fails to perform the duty prescribed in this article to deliver a disclosure statement prior to the signing by the buyer of a binding contract of sale, the buyer shall receive upon the transfer of title a credit of five hundred dollars against the agreed upon purchase price of the residential real property.” Section 465 goes on to provide: “2. Any seller who provides a property condition disclosure statement or provides or fails to *654 provide a revised property condition disclosure statement shall be liable only for a willful failure to perform the requirements of this article. For such a willful failure, the seller shall be liable for the actual damages suffered by the buyer in addition to any other existing equitable or statutory remedy.”
Real Property Law § 467, entitled “Liability,” states: “Nothing contained in this article shall be construed as limiting any existing legal cause of action or remedy at law, in statute or in equity.”
Legal Issues:
A. Does Article 14 Provide a Cause of Action for the Plaintiffs? 1. Analysis of Real Property Law § 465 (1).
Plaintiffs are contending that the defendants breached their obligations under the disclosure form by not revealing the true condition of the swimming pool and should be liable for damages. However, an analysis of the statute leads to the conclusion that there is no cause of action available to the. plaintiffs under the terms of the act. Since plaintiffs are seeking to enforce a right and remedy created by a statute which changed the common law, the terms of the act must be strictly construed (McKinney’s Cons Laws of NY, Book 1, Statutes § 301). Unlike consumer protection legislation found in the General Business Law which gives a right of action either to the consumer or to the Attorney General, this act provides no such specific right of action to the purchaser for a breach of the disclosure form.[2]
It would appear from a reading of the “act” that it attempts to provide a “remedy” in two situations. The first is when the seller fails to deliver the disclosure form prior to signing a “binding contract” as is defined in the statute. In such case, the sole remedy available to the buyer is to receive a $500 credit at the transfer of title (Real Property Law § 465 [1]). If the seller refuses to complete the disclosure and the parties subsequently enter into a contract or the seller delivers the initial disclosure *655 after signing the contract, the buyer is only entitled to the $500 credit. The statute does not permit the purchase price of the property to be reduced at the contract signing to reflect the credit. It is a credit to be given only at closing of title. Consequently, the state and city are entitled to collect their respective transfer taxes on the original sale price and not on the reduced penalty price. If this were not the intent of the Legislature, the statute would permit an adjustment on the signing of the contract when the disclosure was supposed to be delivered and not at the closing.
In this case the defendants did complete the disclosure form and delivered a copy to the plaintiffs before the contract was signed. The plaintiffs were not entitled to a credit of $500 as the sellers had complied with the terms of the statute.
Analysis of this article leads one to wonder why any seller’s attorney would advise a client to complete the disclosure form? The failure to do so leads only to a $500 penalty; but the seller does not make any representations as to the condition of the property. The property would most likely be delivered “as is” under the terms contained in the standard real estate sales contract. In any case whether or not the disclosure is completed and delivered, the act allows for the survival of all common-law and statutory causes of action (Real Property Law § 467). However, completion of the disclosure provides a document that can be used against the seller in a suit under a common-law theory such as one alleging fraud or negligent misrepresentation. The disclosure is certified by the seller giving it certain evidentiary value. By completing the disclosure the seller may be giving the purchaser an advantage in subsequent litigation. A defect that appears after closing in any of the items that are listed in the disclosure would probably cost more than $500 to correct. If giving the $500 credit would buy peace of mind for the seller and cut off any rights to litigation the purchaser might have, then it would make sense to not complete the disclosure. But this is not the case. Since the act preserves all rights and remedies available to the parties, the seller is not gaining any relief from potential future litigation by giving the credit. The purchaser still has to prove either the seller’s “actual” or “constructive” knowledge of the existence of the unfavorable condition before closing, something that often is virtually impossible.
Is there any advantage to the seller to completing the form? The disclosure form requires the seller to answer the questions based only on “actual knowledge.” Does the act prevent the *656 purchaser from maintaining an action based on a theory of “constructive knowledge”? Should a reasonable seller have discovered the defect by reasonable observation of the property and notified the purchaser? The statute preserves all common-law and statutory causes of action (Real Property Law § 467) so it does not eliminate a cause of action arising after closing based on “constructive knowledge” of the seller. On the other hand, by requiring that the questions be answered based on actual knowledge, it could be argued that once the seller completed the disclosure form, the buyer has forfeited the right to use “constructive knowledge” as a basis for a cause of action and that the statute has provided the seller with a defense to any action alleging constructive knowledge. This would make some sense and might be more of an encouragement to the seller to complete the disclosure than a monetary penalty. Unfortunately the statute does not clearly state this and any implication in this regard is belied by the fact that the Legislature preserves all common-law and statutory causes of action for the parties. If the Legislature intended to limit the possible causes of action, it must specifically do so. This is not something that should arise through judicial divination of legislative intent.
2. Analysis of Real Property Law § 465 (2).
There is a second situation where the act appears to provide a remedy. Suppose the purchasers are seeking damages for an alleged misrepresentation by the sellers in completing the disclosure, does Real Property Law § 465 (2) provide any relief? Having read this paragraph several times, it is not clear that a reasonable person can understand what it means. It states: “Any seller who provides a property condition disclosure statement * * * shall be liable only for a willful failure to perform the requirements of this article.” (Real Property Law § 465 [2].) However nowhere in the statute is there a definition of “requirements of this article.” Are not the “requirements of this article” the completion of the form or completion of a revised form and delivery of it to the buyer (Real Property Law § 462)? Or is it to be implied that the “requirements of this article” are the “truthful” completion of the form? The statute contains no definition of what is meant by a “willful failure to perform the requirements of this article.” Since this is a legislative attempt to create a new legal right should not the language of the statute be clear and unequivocal? There is no guidance as to what is meant by this phrase.
The form of the disclosure is set forth in the statute as Real Property Law § 462 (2). It states: “The following shall be the *657 disclosure form: * * * .” The same language that appears in the statute is included in the form signed by the parties in this case. The third paragraph of the disclosure provides: “a knowingly FALSE OR INCOMPLETE STATEMENT BY THE SELLER.ON THIS FORM MAY SUBJECT THE SELLER TO CLAIMS BY THE BUYER PRIOR to or after the transfer of title.” (Real Property Law § 462 [2].) It should be noted that the disclosure form does not indicate an action will lie for the failure of the seller to accurately complete the document. It uses the word may in this regard. The use of the word “shall” in the introductory language of the disclosure means that the Legislature is making this the mandatory language to be followed in drafting the disclosure form. The use of the word “may” in regard to the potential liability of a seller for inaccurately completing the form leads to the conclusion that there is no liability under the statute attached to the failure to fill out the form properly. “Shall” generally is given a mandatory interpretation while “may” is used as a permissive term (Statutes § 177). If the Legislature wanted to provide a cause of action in this regard, they would have used the word “shall” and provided a remedy for the failure to abide by that command. They did not do so. The permissive language also ties in with the sections of the statute that preserve whatever causes of action exist at common law, under a statute or in equity, and require the purchaser to meet the standards of proof established under those theories.
The statute does not provide relief if the seller either intentionally or negligently misrepresents the condition of the property. The statute specifically preserves “any existing legal cause of action or remedy at law, in statute or equity” (Real Property Law § 467). Even if the statute does cover intentional or negligent misrepresentations as to the information provided in the disclosure, the act does not create a right of action in that regard. The “willful failure” will make the seller liable for actual damages suffered by the buyer in addition to any other existing equitable or statutory remedy. If an action is brought under a common-law theory, the buyer would be entitled to actual damages. Therefore the statute provides no remedy for intentional or negligent misrepresentation and obfuscates the issue of a purchaser’s available remedies.
Rather than clarifying the situation and creating a remedy, the language of the statute might have the opposite result. This language possibly could be used as a shield by a seller to exclude punitive damages in a fraud suit for failure to disclose. *658 What is to prevent the seller from arguing that the only remedy available now that the statute is in place is “actual damages” since that is the remedy specified in Real Property Law § 465 (2)? By specifying the remedy of actual damages has the Legislature inadvertently eliminated all other categories of damages?
Can the clause be used to preclude a suit for specific performance of the contract by the purchaser? Obviously, the answer must be no since Real Property Law § 467 preserves “any existing legal cause [s] of action or remedy at law, in statute or in equity” and the legislative intent indicates that this is a disclosure law designed for consumer protection (L 2001, ch 456, § 2), so a purchaser can still sue for specific performance and in the alternative damages. Does the statute mean that after being successful on a specific performance suit the purchaser is not precluded from suing the seller for damages for failing to disclose a defect in the premises? That right already exists without this statute.
The only conclusion that can be reached is that Real Property Law § 465 (2) has a nebulous legal effect, if any, and serves only to confuse what had been a well-settled area of real property law. Perhaps part of the problem is that the legislation was designed after similar legislation in Pennsylvania and Connecticut, where real estate brokers prepare contracts of sale, a practice foreign in most parts of New York where attorneys draft contracts for the sale of residential real estate.
Perhaps the “willful failure” contemplated under the act is the refusal to provide the $500 credit at closing. In that situation the seller would then be liable for the actual damages the purchaser suffered as a result of defects discovered after closing. But that interpretation makes no sense, since the first sentence of Real Property Law § 465 (2) states that the “seller who provides a property condition disclosure statement * * * shall be liable only for a willful failure to perform the requirements of this article” and the $500 penalty is only available if the seller refuses to provide the disclosure form. Therefore the failure to provide the $500 is not a “willful failure” to comply with the requirements of the act.
If the intent of this section is to create a right of action for the improper completion of the disclosure form, it fails to do so. Even giving a liberal interpretation of the act and including the intent of the Legislature from the legislative history, it is unclear in its meaning and therefore Real Property Law § 465 (2) is unenforceable.
*659 Parenthetically, what relief is available to the purchaser if the seller refuses to complete the disclosure and the seller refuses to give the credit of $500 at the closing? Does the purchaser walk away from the closing table and sue the seller for money damages or specific performance? Or does the purchaser accept title and sue the seller using common-law breach of contract theories if a defect appears after closing? Since the Legislature provided no redress for such a failure to perform by the seller, if the purchaser refuses to close title, the purchaser will be in breach of the contract and liable for the seller’s damages and not vice versa. The purchaser’s remedy is to close and then if there is a defect, sue the seller in that regard. Of course, the problem with that scenario is that if the purchaser invokes the statute, the seller will be able to utilize a defense of lack of actual knowledge since pursuant to the act the knowledge required to complete the form is “actual knowledge.” If the purchaser is invoking the benefit of the statute then that evidentiary standard of the law would come into play.
There are serious problems with the “remedy” portions of this act, making it unenforceable. It is impossible to determine what relief the Legislature was seeking to provide to purchasers when there is a failure to comply with the act. Therefore Real Property Law § 465 is unenforceable beyond the requirement to give a $500 credit at closing should the seller refuse to provide the form. Thereafter common-law or statutory remedies, if any, are available and the relief provided in the statute is negated.
3. Does the Disclosure Survive Contract or Closing?
If the article 14 disclosure does not survive either the signing of contract or transfer of title, then no right of action would exist for failure to comply with the statute or for the failure to properly complete the form beyond the right to get the $500 credit. Although the statute requires that a signed copy of the disclosure be attached to the real estate purchase contract (Real Property Law § 462), nothing in the act requires that the information contained in the form be included in the contract. The language of the statute establishes that the information contained in the disclosure survives neither contract nor closing. Real Property Law § 462 (1) provides: “Nothing contained in this article or this disclosure statement is intended to prevent the parties to a contract of sale from entering into agreements of any kind or nature with respect to the physical condition of the property to be sold, including, but not limited *660 to, agreement for the sale of real property ‘as is.’ ” If a contract provides that the property is being sold “as is” then the buyer is taking it in the condition that it actually exists and not in the condition as it was represented. The statute does not give any definition of “as is.” So the common-law meaning of that term will apply. “As is” means that the buyer is purchasing the property with the defects that are there, whether or not they are patent or latent. What then is the impact of the disclosure on the rights of the parties?
The contract in this transaction contains the standard clause that exists in almost every residential real estate contract in the State of New York. Paragraph 12 provides: “Condition of Property. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser’s own inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or other property included in the sale, given or made by the Seller or its representatives, and shall accept the same ‘as is’ in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16 (e), [sic]) without any reduction in the purchase price or claim of any kind for any change in such condition be reason thereof subsequent to the date of this contract * * * ”
Paragraph 16 (e) of the standard form contract and the contract in this transaction states that the sale is to be subject to and conditioned upon: “All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.”
Paragraph 28 of the standard form contract which was utilized in this case contains the following language: “(a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract, it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in the contract.”
*661 In addition to the above clauses, the attorneys for the parties agreed to a rider to the contract which contained the following language: “3. The Seller has not made and does not make any representations or warranties whatsoever as to the physical conditions, income, expenses, operation or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and Purchaser hereby expressly acknowledges that no such representations have been made and Purchaser further agrees to take the premises and all such fixtures and personal property therein strictly ‘as is.’ ” This paragraph goes on to state that plumbing, heating, appliances, and electrical systems will be in working order and the roof free from leaks on the date of delivery of the deed, but that this representation shall not survive delivery of the deed. This clause, although part of the rider to the contract, is so standard that it or something similar is contained in every residential real estate contract prepared by a lawyer.
Paragraph 12 of the rider provides: “Purchaser has caused engineering, termite and other inspections be [sic] made in the subject property. Purchaser shall have no objection to the property and is buying the property ‘as is’ [sic] condition. The Purchaser acknowledges receipt of the Seller’s ‘Property Condition Disclosure Statement’ annexed herewith, and the Buyer understands that this information is a statement of certain conditions and information concerning the property known to the Seller. It is not a warranty of any kind by the Seller or seller’s agent and is not a substitute for any home, pest, radon or other inspections or testing of the property or inspection of the public records.”
Plaintiffs in this action actually had a structural inspection performed on the premises in February 2002 on a date before the defendants completed the disclosure form and before the contract was entered into. By doing so, the plaintiffs had the ability to challenge the representations made by the defendants in the disclosure form if they were provided with information that was in conflict with the structural report. The structural inspection did not include the swimming pool. The inspector did comment on the deck, advising that the “rear raised wood deck is in poor condition” and recommending that it be completely rebuilt. This information was used to negotiate an adjustment in the purchase price. The contract also provided that the “Seller * * * remove all debris from under rear deck prior to closing.” This information would support defendants’ position that they did not have actual knowledge of the condi *662 tion of the pool because it was not visible prior to the time the disclosure was filed.
Whatever rights, if any, that might have arisen under the disclosure were merged into the contract and do not survive the execution of the contract. Both parties were represented by counsel when the contract was negotiated. They had the opportunity to provide for a remedy in the event a defect in the premises became apparent after either contract or closing which should have been discovered and divulged. They did not do so. There is nothing in the statute that indicates that the Legislature intended the disclosure to survive beyond contract or closing. In fact, the failure to grant the purchaser or the Attorney General a right of action in regard to the refusal of the seller to comply with the statute when such a practice is common in other consumer protection laws is a clear indication that there is no intention on the part of the Legislature to have the disclosure form survive closing.
Purchaser has no cause of action based on article 14 of the Real Property Law. The items set forth in the disclosure form merge into the contract of sale and into the deed at closing.
4. What Does “Unknown” Mean?[3]
A seller is instructed to answer all questions based on the seller’s “actual knowledge” of the existence of a defect or condition. The seller may answer the questions either “yes,” “no,” “unknown” or “non-applicable” (Real Property Law § 462 [2]). The form goes on to instruct the seller that “if you do not know the answer check ‘unkn’ (unknown).” This is a contradictory instruction since if the answers are based on “actual knowledge” a response of “unknown” is an oxymoron. The defendants answered “Unkn” in regard to the rot or water damage (question 20). A review of the form reveals that the sellers answered “unknown” to 80 of the 48 questions on the form. What is the effect of this “lack of knowledge”? The statute provides absolutely no guidance. Common sense tells a purchaser that for any items marked “unknown,” a duty to inquire should arise. The seller is affirmatively asserting a lack of knowledge as to the information necessary to complete the form. A prudent purchaser having been informed of seller’s lack of knowledge should either hire a structural engineer to inspect all of the “unknowns,” or take some other steps to acquire the knowledge necessary to make an intelligent deci *663 sion regarding the condition of the premises. Since the seller only has to disclose those items of “actual knowledge,” the burden is shifted to the purchaser to take steps to protect himself or herself. The statute provides no guidance in this situation.
The statute does not require the disclosure to be delivered at any particular time before contract signing, only “prior to the signing by the buyer of a binding contract of sale.” Does this mean if the parties get together for a sit-down contract signing, the seller can hand the disclosure form to the buyer at the table? Although this is delivery before the “signing of the binding contract,” is it an effective delivery of information? Must the buyer walk out on the contract signing and reschedule it, pending receipt of a satisfactory explanation of the “unknown” items? Or does the buyer offer to sign the contract and include a structural inspection contingency clause, something most seller’s attorneys do not advise since it is then not a binding contract? Or does the buyer accept the disclosure and have the “unknown” items merge into the standard contract’s “as is” clause? By accepting the disclosure with “unknowns,” the buyer is waiving any claims for defects that arise in those areas so answered. That is the only rational conclusion that can be drawn. Accept an “unknown” answer and the buyer is relieving the seller of any potential liability. How can a buyer prove at trial that the seller had “actual knowledge” of the condition when the seller answered the question “unknown”? The buyer would be better off without the form being completed and left to the common-law remedies of fraud or negligent misrepresentation.
The seller, answering “unknown,” triggers a duty to inquire on the part of the buyer and relieves the seller of any potential liability for defects that arise in regard to the part of the premises covered by the question.
B. Does the Purchaser Have a Cause of Action?
Although plaintiffs did not plead a breach of contract action, CPLR 3025 (c) permits the court to conform the pleadings to the proof adduced at trial. This being the case the court will analyze the evidence that plaintiffs provided at trial to determine if a cause of action exists for breach of contract.
Since the property was sold “as is,” in order to prove breach of contract the plaintiffs would have to establish that defendants had actual knowledge or constructive knowledge of the condition of the pool. Defendants deny having actual knowledge of the condition of the pool. Although defendants admit *664 that they had. a new liner installed and repairs done to the pool in June 2001, there is no showing that the defendants were notified by the pool repair personnel of the condition of the pool and as to the nature and extent of the existing damages (although defendants did admit paying $3,000 to $4,000 for repairs and can be charged with knowledge of the nature of the repairs made). Plaintiffs’ witness testified that the existence of the repairs to the pool was obvious when he removed the liner after the closing in 2002; however, he did not state an opinion as to the age of the repairs and how long they had been in place. Defendants had rented the premises to third parties for the nine years before 1999 and had not been at the house with any regularity during that time. Plaintiffs have not proven that the defendants had actual knowledge of the condition of the pool at the time of closing.
Did the defendants have constructive knowledge of the condition of the pool? Plaintiffs’ structural engineer never inspected the pool. Plaintiffs’ witness at trial stated that he could see the rot at the base of the pool after he removed the decking. He also indicated that had some of the debris that existed under the decking been removed, the rot would have been visible. These facts tend to negate a claim that the defendants had constructive knowledge of the condition. Existence of the condition was not easily discoverable upon reasonable observation.
Plaintiffs are left with the dilemma which every litigant faces when alleging a defective condition. If claiming that the defect was patent, the defendants had no duty to speak and the plaintiffs should have discovered the defect upon reasonable inspection. If either of the plaintiffs did not personally inspect, or their agent, the structural inspector, did not look at the deck, then the plaintiffs have waived any claims against the defendants based on the existence of the patent defect. But what about constructive knowledge of the patent defect? Should not the defendants be charged with constructive knowledge? If yes, then how did this knowledge arise? It is not clear that the condition was open, obvious and subject to discovery upon reasonable inspection by the defendants. Plaintiffs’ witness stated that he did not see the damage until the deck was removed and that debris under the deck made it difficult to see if someone was checking out the structure of the deck. The only possible source of constructive notice would be by imputing knowledge to the defendants from the work done by the pool repair person in 2001. However, there is no evidence as to what work was actually done at that time. The repair bills are not in *665 evidence. Plaintiffs had the burden of proof in that regard and have not met that burden. It is impossible to say that the defendants had constructive knowledge of the patent defect.
If this is a latent or hidden defect, then the defendants have to have had actual knowledge of the condition and the concomitant duty to speak. There is no proof that they had actual knowledge of the existence of the latent defect. If the sellers truthfully completed the disclosure, then they admitted they lacked any actual knowledge of the condition by answering the question “unknown.”
The above analysis under contract law is thwarted by article 14 of the Real Property Law. The defendants provided the disclosure and checked “unknown” in regard to water and rot conditions. The statute requires revealing conditions only of which the defendants had “actual knowledge.” Since the defendants provided the disclosure statement, they are entitled to the protection of the statute and are only liable for failing to disclose facts about which they had “actual knowledge.” A claim against them based on constructive knowledge will not lie. Plaintiffs cannot prove that the defendants had actual knowledge of the latent defect and therefore are remediless against these defendants.
Conclusion:
Real Property Law article 14 requires the seller of residential real property to make certain disclosures to the purchaser prior to sale. Other than providing a $500 credit to the purchaser at transfer of title, the statute has no effect on common-law or statutory theories of recovery which the purchaser may assert against the seller in a suit for defects that arise after closing. Other than the $500 credit at closing, the other remedies contained in Real Property Law § 462 are void for vagueness and unenforceable in a legal or equitable proceeding. The Legislature needs to redraft those sections to either create a new right of action, or eliminate them so as to avoid confusion.
Plaintiffs’ action based on a breach of the disclosure statement is dismissed on the grounds that no such cause of action is created by Real Property Law article 14. Further, any information disclosed as required by article 14 merges into the contract of sale and does not exist as its own basis of a common-law cause of action. Plaintiffs’ relief existed under common-law contract theories. Plaintiffs have not proven their prima facie case under those theories.
When I was a child and fell down and bruised some part of my body, I would run crying to my mother. She would “kiss the *666 boo-boo” and make it better. Sometimes if I cried enough she would put a band-aid on the wound whether it needed one or not. Many times, removal of the band-aid a few days later would be more painful than the original injury. In this case rather than “kissing the boo-boo to make it better,” the Legislature put the wound in a full body cast. This legislation must be re-examined and redrafted so that it can achieve its stated purpose of consumer protection.
Since this decision started with the paraphrase of a quote from the Bard of Avon, perhaps it is appropriate to end with one as well. It is a law drafted by a legislature, full of sound and fury, achieving almost nothing.[4]

. A paraphrase of Hamlet’s soliloquy in William Shakespeare’s Hamlet, act III, scene 1.

. For instance General Business Law § 349, “Deceptive acts and practices unlawful,” gives a right of action to the Attorney General and the consumer, as does article 36-A governing “Home Improvement Contractors.” Article 35-D, “Sale of Dogs and Cats,” gives a remedy to a consumer who purchases an unfit animal, but creates only a right of action in that regard in favor of the Attorney General leaving the consumer to common-law remedies only. A violation of Vehicle and Traffic Law article 12-A, the “Motor Vehicle Repair Shop Registration Act,” gives the consumer no right of action at all and relies on the Commissioner of Motor Vehicles to pursue violations based on consumer complaints.

. Not to be confused with the character U.N. Owen in Agatha Christie’s And Then There Were None, also known as Ten Little Indians.

. A paraphrase of Macbeth in William Shakespeare’s Macbeth, act V, scene 5.