OPINION OF THE COURT
C. Stephen Hackeling, J.
*343 The plaintiff buyer brings this action sounding in breach of contract and fraud seeking to recover for patent damage to the floors and walls which were discovered upon taking occupancy of a house she purchased. The defendant sellers assert Real Property Law § 465 (1) and/or the common law as an affirmative defense which bars all claims for property damage after the tender of a deed in an “as is” sale of real property.
Factual Background
It is undisputed that on July 2, 2004 the parties executed a New York State Bar Association (NYSBA) approved standard printed contract, which delineated a rider, concerning the sale of a single-family residence located at 41 Maple Place, Huntington, New York. The sellers elected not to make any representations regarding the condition of the property, as contained in Real Property Law, article 14, § 462. Instead the sellers paid the $500 credit contained in section 465 (1). Both the printed contract and the rider contain clauses indicating that the sale was “as is,” with paragraph No. 11 expressly detailing that all representations merge into the deed and are discharged upon delivery of same. The buyer had the property inspected by an engineer. The closing of title occurred on October 26, 2004, and the sellers held over five days pursuant to the contract. The buyer did a walk through inspection of the premises prior to closing. An escrow agreement was entered into to deal with the sole contingency that buyer would be paid if sellers held over more than five days. The sellers moved out within the five-day period and the holdover escrow was released. After taking occupancy, the buyer noticed damage to the floors and commenced this action to recover money damages for same.
Legal Issue Presented
Do any breach of contract or common-law fraud claims survive the tender of a “merged” deed pursuant to an “as is” real estate transfer, if the seller elects not to make Real Property Law § 462 representations and instead pays the $500 provided by section 465 (1)?
Discussion
Breach of Contract:
The court summarily dismisses the buyer’s breach of contract cause of action as this NYSBA approved standard contract and rider contain a “merger” clause which expressly vitiates any *344 representations and agreements contained therein upon tender of a deed. The buyer’s only available remedy in such a situation, absent a written “survival of deed” agreement, is to seek to void the contract and seek redress under a fraud theory which will be addressed infra. (See Bridger v Goldsmith, 143 NY 424 [1894].)
Property Condition Disclosure:
The 2002 enactment of the Property Condition Disclosure Act (Real Property Law art 14) attempted, somewhat unsuccessfully, to effect a sea change in a well-settled area of New York’s Real Property Law. Section 462 of the Real Property Law mandates a uniform disclosure statement which requires sellers to make a minimum of 48 affirmative representations concerning the condition of a residential house and property. Previously, New York was unequivocally characterized as a “cavaet emptor” (buyer beware) real property transfer state for “as is” purchases of realty, with sellers having no duty to disclose. (Perin v Mardine Realty Co., 6 NY2d 920 [1959]; Stambovsky v Ackley, 169 AD2d 254 [1st Dept 1991].)
Curiously, the Legislature created an “opt-out” mechanism in its “remedy” provision of this consumer protection statute when it provided the following in section 465:
“§ 465 Remedy
“1. In the event a seller fails to perform the duty prescribed in this article to deliver a disclosure statement prior to the signing by the buyer of a binding contract of sale, the buyer shall receive upon the transfer of title a credit of five hundred dollars against the agreed upon purchase price of the residential real property.
“2. Any seller who provides a property condition disclosure statement or provides or fails to provide a revised property condition disclosure statement shall be liable only for a willful failure to perform the requirements of this article. For such a willful failure, the seller shall be liable for the actual damages suffered by the buyer in addition to any other existing equitable or statutory remedy.”
At first blush, this court envisioned that such a dramatic policy shift would have engendered significant litigation with accompanying judicial construction of the subject statute. Surprisingly, there exist only a handful of reported cases involving article 14 controversies, wherein sellers tendered the *345 requisite disclosure statement and none which involve a seller who elected to give the $500 opt-out credit, so as not to have to disclose.
The act of disclosure “compliance” is significant as the section 465 (2) statutory cause of action expressly limits its self-contained “willful failure to perform” cause of action to sellers who actually disclose. Real Property Law § 465 (2), the remedy portion of the statute, has no effect upon sellers who elect to “opt out,” other than to impose a $500 credit due purchasers. (See Malach v Cheng Lung Chuang, 194 Misc 2d 651, 654 [Civ Ct, Richmond County 2002].) With the statutory remedy being unavailable, the court adopts the Malach court’s dicta that opt-out sellers are still subject to the common law or existing statutory theories. This is consistent with section 467 of article 14 which provides, “Nothing contained in this article shall be construed as limiting any existing cause of action or remedy at law.”[1]
Fraud:
In the instant case the sellers made the section 465 (1) election not to disclose and the buyer accepted the $500 credit at closing. As a result of this “opt out,” the plaintiff must look to the common law for her rights and remedies. Virtually all property condition representations under an “as is” contract with a standard “merger” clause do not survive delivery of the deed and are not actionable in New York. (Venezia v Coldwell Banker Sammis Realty, 270 AD2d 480 [2d Dept 2000].) Generally speaking, aside from limited strict liability and latent defect negligent misrepresentation situations, the only viable cause of action to recover for property damage after deed delivery under a contract with a merger clause sounds in fraud in the inducement. (See Cohan v Sicular, 214 AD2d 637 [2d Dept 1995]; Tyler Realties v Roper, 17 Misc 2d 765 [Sup Ct 1959].)
There exist five elements to establishing a prima facie cause of action for fraud. (See Koagel v Ryan Homes, 167 AD2d 822 [4th Dept 1990], citing Chase Manhattan Bank, N.A. v Perla, 65 AD2d 207 [4th Dept 1978].) The primary element involves the making of an affirmative misrepresentation. (See Hauser v Lista, 201 AD2d 873 [4th Dept 1994].) This representation must be false and the damaged party must have relied upon it. (Scars *346 dale Publ. Co.-Colonial Press v Carter, 63 Misc 271 [App Term 1909].)
The threshold question relevant to the disposition hereof is how would it be possible to sustain a common-law fraud cause of action under a statutory scheme where you may elect not to make any representations? The court can think of no situation wherein the intent and conduct of the parties is as clearly delineated as where a party pays for the right to invoke a statutory authorization to expressly be relieved of the obligation to make representations. Absent an express or implied misrepresentation, there exists no fraud. “The mere silence of [the defendant], unaccompanied by some act or conduct which deceived [plaintiff], [i]s not actionable fraud in the absence of any confidential or fiduciary relationship” (see Moser v Spizzirro, 31 AD2d 537, 537 [2d Dept 1968]). Absent any representation we do not reach the issue of whether it was false. Absent any representation, how could the purchaser argue reliance? Despite Real Property Law § 467’s statutory language, the creation of a nondisclosure election inherently vitiates a fraud claim which exists at the time of the election as it is premised upon relied upon misrepresentations which are no longer possible.[2] (See Danann Realty Corp. v Harris, 5 NY2d 317 [1959] [holding that written clauses in a merged contract asserting that “no representations” are made or relied upon vitiate fraud as reliance inherently cannot be established].)
The court is aware that the buyer alternatively argues that the damage was done after delivery of the deed during the move out. This argument is rejected in light of the sellers unrebutted testimony that the damage existed prior to the closing and the buyer’s testimony that she did not look under the rugs and furnishings during the final inspection. Several of the pictures contained in exhibit 1 do indicate damage to walls and doors which could reasonably be determined to have occurred during *347 the move out. However, the court will not address this factual dispute as the buyer’s damage estimates deal only with floors. Absent proof of damages, the buyer’s postclosing cause of action for damage to personal property is not sustainable.
Accordingly, the court dismisses the plaintiffs complaint.

. This court does not adopt the Malach court’s reasoning that the tendering of a proper disclosure statement vitiates common-law and statutory remedies.

. It would be interesting to consider whether a “subsequent” oral misrepresentation made in conjunction with a section 465 (1) opt-out election is actionable. Could a purchaser reasonably claim reliance on same after the seller puts the buyer on notice he is statutorily not making any representations and is paying $500 as a consequence of doing so? Though a remote possibility, it is conceivable that a seller could make a postelection gratuitous misrepresentation which would cause the buyer to rely upon same in making the decision to close and accept a merged deed without doing an inspection which might have otherwise been done.