WILLIAM E. MEYERS et al., Appellants-Respondents, v MARLENE ROSEN, Respondent-Appellant. [893 NYS2d 354]—

McCarthy, J.

This dispute arises from plaintiffs' discovery of defects in the residential property that plaintiffs purchased from defendant. On September 3, 2005, plaintiffs received defendant's Property Condition Disclosure Statement (hereinafter PCDS) pursuant to Real Property Law article 14 and the parties executed a purchase and sale agreement. As relevant to this appeal, the PCDS gave notice of defendant's actual knowledge of a kerosene leak on the property, and denied actual knowledge of any rodent infestation or damage, any basement seepage resulting in standing water, or any material defect in the heating system. While defendant did not respond to the portion of the PCDS regarding defendant's knowledge of any material defect in the septic

system, the PCDS did disclose that the system was 16 years old. The purchase and sale agreement contained an inspection contingency clause and conveyed the building and certain personal property in "as is" condition. Prior to the closing, plaintiffs visited the property several times and had the property inspected by a licensed engineer who was experienced in inspecting septic systems. The few issues raised by the inspection were addressed to plaintiffs' satisfaction.

Immediately upon taking possession of the property, plaintiffs discovered gray water in the basement and an investigation revealed that the septic system had failed. Shortly thereafter, they discovered that the heating system suffered from an undersized propane supply line, debris had been left on the property, the dishwasher had to be replaced, kerosene had spilled in the basement, and the house was infested with mice. Plaintiffs then commenced this action, alleging only that the foregoing defects were not disclosed on either the PCDS or otherwise, and that they relied on the disclosure in the PCDS in purchasing the property. Plaintiffs' verified bill of particulars alleged, upon information and belief, that defendant had knowledge of the defects by virtue of living at the property for approximately 16 years and knowingly failed to disclose the defects. Supreme Court, noting that plaintiffs alleged only a cause of action based on failure to disclose defects on the PCDS, granted defendant's motion for summary judgment in part, dismissing the complaint except with respect to the claims regarding rodent infestation and material defects in the heating system. Both parties appeal.

In New York, the doctrine of caveat emptor traditionally "impose[d] no duty upon a vendor to disclose any information concerning the property in an arm's length real estate transaction" (*Stoian v Reed*, 66 AD3d 1278, 1279 [2009], quoting *Bethka v Jensen*, 250 AD2d 887, 887-888 [1998]). Legal and equitable exceptions to the doctrine exist, however, imposing a duty on a seller, in certain circumstances, to disclose certain conditions affecting the property (*see e.g.* Agriculture and Markets Law § 310 [1]; Real Property Law § 242 [1] [a]; § 333-c [1]; Energy Law § 17-103 [1] [a]; General Business Law § 352-e [1]; *Kerusa Co. LLC v W10Z/515 Real Estate Ltd. Partnership*, 12 NY3d 236, 244-245 [2009]; *Boyle v McGlynn*, 28 AD3d 994, 995 [2006]). In 2002, Real Property Law article 14 was enacted to codify a seller's disclosure obligations for certain real property transactions and promote the informed negotiation of real estate contracts (*see* L 2001, ch 456, § 1). The mechanism for disclosure is the PCDS form, the particulars of which are mandated by statute (*see* Real Property Law § 462 [2]). A seller's failure to

comply with the requirement to complete, sign and deliver a PCDS to the buyer prior to the signing of a binding contract has two consequences: it compels a credit of $500 against the purchase price in favor of the buyer when title is transferred (*see* Real Property Law § 462 [1]; § 465 [1]) and, more importantly, it puts the buyer on notice that the seller is unwilling to make representations with respect to the property conditions specifically enumerated in the PCDS form, thus emphasizing the buyer's need to "beware" (*see Bishop v Graziano*, 10 Misc 3d 342, 346 [2005]). Real Property Law article 14 does not inhibit the transfer of property "as is" or relieve a buyer from his or her obligation to pursue appropriate inspections and testing of the property and review public records affecting the property (*see* Real Property Law § 462).

Where a seller does deliver a PCDS to the buyer, the seller may also be liable, under the statutory remedy available to the buyer, to the extent of the buyer's actual damages resulting from the seller's willful failure to perform the requirements of Real Property Law article 14 (*see* Real Property Law § 465 [2]). This remedy is "in addition to any other existing equitable or statutory remedy" (Real Property Law § 465 [2]). The disclosures required on the PCDS are based solely on the seller's "actual knowledge" (Real Property Law § 461 [3]; § 462 [2]). Accordingly, a claim under Real Property Law § 465 (2) must allege the seller's willful failure to comply with one or more of the obligations imposed on the seller under article 14, resulting in the buyer's damages, and a claim for willful failure to disclose under this provision must allege that the seller had actual knowledge of a condition that was misrepresented by the disclosure contained in the PCDS.

Here, plaintiffs do not seek relief under Real Property Law § 465 (1) for defendant's failure to complete the PCDS with respect to the septic system. Defendant's silence regarding knowledge of any material defect affecting the septic system provided no basis for a remedy under Real Property Law § 465 (2).* Consequently, plaintiffs' claim for damages in connection with replacing the septic system was properly dismissed.

Regarding water seepage in the basement, defendant did dis-

---

* Because plaintiffs failed to allege an intent to deceive and conduct that thwarted plaintiffs' ability to discharge their duty to properly inspect the property, plaintiffs' "active concealment" argument is unavailing. Moreover, plaintiffs submitted no evidence to substantiate or elaborate on the nonparticularized claim in their verified bill of particulars that defendant made affirmative statements about the septic system being in good working order (*see* CPLR 3016 [b]).

close to plaintiffs, outside of the PCDS and prior to the closing, that the sump pump would run every four hours during a heavy rain and that the basement had flooded only once, as a result of an ice storm. Defendant admitted in her affidavit and deposition testimony that the basement had water seepage when the house was first built 16 years earlier and that the sump pump was installed as a result. Even if this information could reasonably be construed as contradicting defendant's representation on the PCDS that the basement did not have seepage resulting in standing water, the record does not support a claim that the representation on the PCDS resulted in actual damages. This is particularly evident in light of the fact that plaintiffs were advised that the sump pump would run during a rain storm, and they proceeded to close on the property with that knowledge.

As to plaintiffs' claim that improper sizing of the propane line feeding the furnace constituted a material defect, plaintiffs failed to raise any factual issue regarding defendant's actual knowledge of this purported defect. We disagree with Supreme Court's finding that the evidence required a determination on defendant's credibility at trial. Defendant denied knowledge of a material defect in the heating system on the PCDS and she stated in her affidavit that if she knew of any problems with the heat, she would have disclosed it on the PCDS. She testified that the furnace was original and that, other than having the gas company fix the pilot light on one occasion, she had not had any problems with it and the furnace was working at the time of the closing. Plaintiffs' testimony that a post-closing inspection by plaintiffs' heating contractor prompted plaintiffs to have a larger propane line installed fails to create an issue of fact regarding defendant's actual knowledge of the purported defect. Nothing in the record suggests that defendant had any special knowledge of heating systems in general and, as plaintiffs' own pre-closing inspection of the house failed to identify the purportedly undersized propane line, any conclusion that defendant knew the line to be undersized prior to closing is speculative at best. To hold otherwise would graft a constructive knowledge standard onto Real Property Law § 465 (2) when disclosures under Real Property Law § 462 are expressly limited to the seller's actual knowledge (see Real Property Law § 461 [3]). We note that proposed legislation similar to Real Property Law article 14 was vetoed by the Governor, in part, because it incorporated a constructive knowledge standard (see proposed legislation to amend Real Property Law, Veto Jacket, Veto 73 of 2000). Accordingly, this claim should have been dismissed.

Supreme Court properly dismissed plaintiffs' claims with re-

spect to debris left on the property and a defective dishwasher because the PCDS contained no misrepresentations with respect to either of these conditions. Supreme Court also properly dismissed the claim with respect to the alleged kerosene leak in the basement. Plaintiffs failed to raise any factual issue with respect to causation on this claim. Even assuming that there was a kerosene spill inside the basement and that defendant had actual knowledge of the spill, defendant's disclosure on the PCDS of a kerosene spill on a particular date requiring involvement by the Department of Environmental Conservation put plaintiffs on notice of this condition. We note that, although the sale was contingent upon plaintiffs' receipt of the reports from the Department of Environmental Conservation regarding the spill, they did not read them until after the closing. In any event, plaintiffs repeatedly visited the property and conducted an unobstructed inspection, yet they failed to detect any kerosene spill inside the basement despite knowledge of a kerosene leak from a fuel tank located outside the foundation wall. The evidence does not suggest that defendant's disclosure somehow thwarted plaintiffs' ability to discover and avoid any damage resulting from kerosene in the basement.

Finally, Supreme Court properly denied defendant's motion with respect to the alleged mice infestation. Plaintiffs' real estate agent testified that she may have noticed mice during their walk-through inspection, but the record does not indicate whether she brought the issue to plaintiffs' attention. Defendant's testimony, in which she admitted that she found mouse droppings in the house and employed mouse traps a couple of years prior to the sale but never noticed a problem with mice because she had cats, was sufficient to raise an issue of fact as to whether she had actual knowledge of an infestation when she denied same on the PCDS.

Spain, J.P., Rose, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant's motion dismissing plaintiffs' claim for damages relating to the heating system; motion granted to said extent and said claim dismissed; and, as so modified, affirmed. **[Prior Case History: 22 Misc 3d 1129(A), 2008 NY Slip Op 52667(U).]**