OPINION OF THE COURT
Robert Roberto, Jr., J.
Motion by the defendant Irwin Pisarz for an order pursuant to CPLR 3212 granting him summary judgment dismissing the complaint as against him is decided as follows:
This is an action in which the purchaser of residential premises in Massapequa, New York, claims that the seller, defendant Irwin Pisarz, intentionally hid from her a chronic basement flooding and/or water seepage condition, which she discovered after she purchased her home. She asserts that she would not have proceeded with the sale had she known about it, and seeks money damages for the losses allegedly suffered stemming from the condition of the basement. There is one cause of action alleged against Pisarz,[1] which recites, among other things, a failure to disclose the condition in a property condition disclosure statement, given to her pursuant to Real Property Law article 14.
The essential allegations found in the verified complaint concerning this defendant are as follows:
“13. The defendant provided plaintiff with a Property Disclosure Statement representing . . . that there was no rot or water damage to said premises, that there were no flooding, drainage or grading problems with the property, that there was no seep *1012 age that resulted in standing water; that there were no material defects in the plumbing system, foundation, slab, interior walls, ceiling, exterior walls or siding or floors.
“14. Plaintiff was given possession ... on August 11, 2003, at which time plaintiff inquired with the defendant as to the existence of water in the basement . . . Defendant represented that said water was spilled during the course of removing the dehumidifier and refrigerator ... In fact, this water was a result of overflow from the sump pit in said premises.
“15. The defendant . . . was negligent, careless and reckless in their [sic] preparation of the Property Disclosure Statement in failing to disclose the proper condition of the premises.
“16. The defendant . . . intentionally failed to disclose the water condition and intentionally mislead plaintiff as to the water condition in said premises in order to induce the plaintiff into purchasing and closing on said premises.
“17. The defendant . . . intentionally failed to disclose defects in the premises in order to induce the plaintiff to purchase the premises, in that the defendant failed to disclose dangerous mold and contaminants in the home, flooding problems in the premises, failed to disclose mold, wetness and dampness in said premises.
“18. Had the plaintiff known of the foregoing conditions, plaintiff would not have purchased said house.”
As to damages, the complaint alleges that the plaintiff lost the full use of the house, in that she was required to hire an environmental firm to clean and/or remove all portions of the house that were affected by mold and/or other contaminants, that she could not live there and was required to rent an apartment, and also lost time from work.
The record reveals that the defendant answered “no” to question 20, which asks if there was any rot or water damage to the structure. Questions 30 and 31 on the statutorily-mandated form were unanswered; they ask, respectively, whether there was any flooding or drainage problems resulting in standing water, and whether the basement had seepage resulting in standing water. The form is dated May 27, 2003, the contract is dated *1013 June 6, 2003, and the plaintiff nowhere claims that it was not delivered before the contract was signed.[2] According to the plaintiff, the missing questions ultimately were answered at closing by the seller’s attorney with “n/a”[3] (Gabberty examination before trial at 109). Pisarz himself was not present at that time; it appears that his attorney closed title on August 5, 2003 under a power of attorney. It should be noted at this juncture that the parties have focused exclusively on the questions that were not answered, and not on questions that were answered.
It is undisputed that the plaintiff took possession on August 11, 2003. She claims that she then had to undertake repairs of the condition allegedly hidden from her.
The Statutory Claim
The court agrees with the defendant that the plaintiff cannot make out a claim pursuant to Real Property Law article 14 based upon what is alleged in the complaint, but not because the statute does not provide for such a cause of action.
This 2001 law provides for the mandatory use of a “Property Condition Disclosure Statement” in residential housing sales, which is to be given by the seller to the buyer before a contract of sale is signed. A section of the law is entitled “Remedy,” and the question is whether, and to what extent, it provides the plaintiff in this case with a claim against the buyer.
As indicated in both the statement of legislative findings (L 2001, ch 456, § 1), and in the Senate Memorandum in Support (2001 McKinney’s Session Laws of NY, at 1615-1617), the purpose of the law was to regularize disclosure and supplement information provided by professional inspections and tests, and searches of public records. The questions in the statement are to be fully answered, and it is to be delivered before the contract of sale is signed (Real Property Law § 462 [1]). However, beyond reciting what is stated in the “Remedy” section of the new law itself, there was no discussion in the memorandum regarding the nature of any new cause of action created by the statute. As is indicated below, the definitions section of the statute does not *1014 define certain key phrases found in the “Remedy” provision (see, Real Property Law §§ 461, 465).
The Senate Memorandum acknowledges that the statute changes the common law of caveat emptor, to which “New York case law adheres strongly.” (2001 McKinney’s Session Laws of NY, at 1616.) For that reason, this court must strictly construe any new rights given to the buyer and obligations imposed on the seller with regard to disclosure of defects (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 301; Rust v Reyer, 91 NY2d 355, 360 [1998]). In that regard, it should be noted that the memorandum states only that existing common law is to be changed “by statutorily requiring the seller to give answers to the buyer to questions asked in a property condition disclosure statement or pay a credit to the buyer on transfer of title.” (2001 McKinney’s Session Laws of NY, at 1616.) That is all. There is no indication in the memorandum that the law was intended to completely subvert or replace many decades of well-established common law.
Indeed, the legislative findings section specifically states that the act “is not intended to and does not diminish the responsibility of buyers to carefully examine the property which they intend to purchase,” and that the “act is not intended to and does not limit the existing responsibilities by a seller, buyer or agent concerning the condition of the property or potential liabilities or remedies at law, statute or in equity.” (L 2001, ch 456, § 1.) Accordingly, any analysis of the remedies available to the buyer must take into account the traditional responsibilities of that buyer, as well as the seller, as both remain. With the foregoing in mind, the court turns to the “Remedy” portion of the statute (Real Property Law § 465).
Subdivision (1) provides that if a seller “fails to perform the duty described in this article to deliver a disclosure statement prior to the signing by the buyer of a binding contract of sale,” the buyer shall receive a credit of $500 against the agreed purchase price upon the transfer of title (i.e., closing). In the present case, it is undisputed that the plaintiff received a statement from the buyer that was not complete. It also is undisputed that she was not given a $500 credit at closing.
At subdivision (2), the statute goes on to provide that if a seller delivers such a statement, or fails to deliver a “revised . . . statement” (to account, as the statement informs the parties, for any later-acquired knowledge rendering a previous statement “materially inaccurate”), he or she shall be liable *1015 “only for a willful failure to perform the requirements of this article. For such a willful failure, the seller shall be liable for the actual damages suffered by the buyer in addition to any other existing equitable or statutory remedy.” Unlike subdivision (1), which specifically references delivery of a disclosure statement, there is no definition of what “perform the requirements of this article” means as a trigger of liability under subdivision (2). It should be noted that section 467, entitled “Liability,” echoes that portion of section 465 (2) that provides for additional equitable or statutory remedies, in that the former states that “[n]othing contained in this article shall be construed as limiting any existing legal cause of action or remedy at law, in statute or in equity.”
Initially, the court does not agree with the defendant, citing a decision of the Civil Court of the City of New York (Straniere, J.),[4] that no cause of action exists under the statute at all.[5] As noted above, section 465 is entitled “Remedy” and clearly provides for claims should a seller not comply with the statute. Although the law arguably is not a model of clarity, and its remedy provision may even be seen as discouraging the use of the form that is its raison d’etre, such provision must be given effect by the courts. It is well settled that in construing a statute all constituent elements must be harmonized with the general intent of the whole; effect and meaning must be given to every part (McKinney’s Cons Laws of NY, Book 1, Statutes § 98), as the Legislature will be presumed to have inserted every provision for some useful purpose (Matter ofAlbano v Kirby, 36 NY2d 526, 530 [1975]). All of this must be done in the service of providing for reasonable and sensible construction of statutory language that carries out the intention of the enacting body (McKinney’s Cons Laws of NY, Book 1, Statutes § 98; People ex rel. Sleekier v Warden of City Prison, 259 NY 430 [1932]).
Although no specific section of article 14 is pleaded, the plaintiff does not ask for a $500 credit (§ 465 [1]), but rather alleges facts that might trigger liability under Real Property Law § 465 (2). Nevertheless, the court finds that she was entitled to the credit. By delivering a statement that left questions unanswered, the defendant seller failed “to perform the duty *1016 ... to deliver a disclosure statement prior to the signing by the buyer of a binding contract of sale.” (Real Property Law § 465 [1].) The statement itself not only directs the seller to “answer all questions,” but also states that “[a] knowingly false or incomplete statement by the seller on this form may subject the seller to claims by the buyer prior to or after the transfer of title” (Real Property Law § 462 [2] [emphasis supplied]). Given the overall purpose of the law, and the mandatory nature of the form set forth in that statute, the court has little difficulty in holding that delivery of an incomplete form did not fulfill the seller’s duty. Manifestly, a form that does not answer all the questions does not provide the disclosure the Legislature found to be important, and the buyer was thus entitled to the credit under section 465 (1).
The more difficult question has to do with section 465 (2). The first question was whether the failure here was “willful” (i.e., deliberate and knowing). That cannot be known on this record, one way or the other. The defendant himself did not fill out or sign the form himself; his wife did. The plaintiff therefore would have to demonstrate that the defendant instructed her not to answer these questions, an issue not even discussed by the parties — and which is an inquiry made even more problematic by the possible bar of spousal privilege (CPLR 4502 [b]). However, even assuming that willfulness could be proved, the court cannot permit a statutory section 462 (2) claim to proceed in this case.
The court finds that what the plaintiff seeks is beyond the intended reach of the statute. Under the undisputed circumstances extant here, permitting a recovery under section 465 (2) would necessitate forgiving this buyer her own failures, and would ease her burden under existing law to a degree that cannot be justified under a fair reading of the statements of legislative intent set forth above. As noted, the Legislature itself stated in its findings that “[t]his act . . . does not diminish the responsibility of buyers to carefully examine the property which they intend to purchase.” (L 2001, ch 456, § 1.)
Accordingly, what must be dispositive here is the undisputed fact that, notwithstanding the missing information, the plaintiff — represented by counsel — signed the contract. She clearly was on notice that important information was missing. She therefore cannot claim that she relied on the statement as assuring her that no water condition existed before legally committing herself to the sale. As noted above, the form statement *1017 requires that all questions be answered, and, if they were not, a literal reading of the statute would lead to the conclusion that if this omission were deliberate (i.e., willful), the buyer would be able to demonstrate a “willful failure to perform the requirements of this article.” A claim would lie under section 465 (2) no matter what the buyer did, or, more to the point, did not do. The omission of information by the seller alone would be sufficient. Indeed, it would not matter if a plaintiff buyer did not hire a competent engineer, or did not even visit the property herself. Such an interpretation would fly in the face of the Legislature’s clear desire not to relieve the buyer of her own responsibilities. Rather, the claim must be one that takes into account the buyer’s own duties. It should be stressed that the focus of the statute is on what the buyer should know before entering into a contract in the first instance; therefore, for purposes of the statutory claim, the court cannot look to the statements made at the closing “filling in” the missing information as the misrepresentations upon which she relied.
In view of the foregoing, what appears to be needed for purposes of section 465 (2) is a working definition of the phrase “willful failure to perform the requirements of this article” that escapes the inconsistency flowing from a dry and literal application of the language, in favor of one that meets the legislative goals described above. Accordingly, this court holds that the phrase means (1) a deliberate misstatement or misstatements in a fully completed and timely delivered statement regarding the defective condition complained of (2) that would tend to assure a reasonably prudent buyer that no such condition existed, and (3) which a professional inspector might not discover upon an inspection of the premises that would meet generally accepted standards in the trade.
This relieves the buyer of having to plead and prove the seller’s active physical concealment of the condition, the only circumstance under the common law that obligates the seller to disclose such condition (see, Jablonski v Rapalje, 14 AD3d 484 [2005]; Bethka v Jensen, 250 AD2d 887 [1998]), and replaces it with proof that the misstatement about the condition on the statement was deliberate, but without abandoning the Legislature’s clear additional desire to uphold the traditional notion that a buyer must still make prudent inquiries and hire competent professionals to assure him or her that the property is in acceptable condition.
Making it any easier on the buyer would cut a swath through the doctrine of caveat emptor that cannot be reconciled with the *1018 statements of legislative intent set forth above. It would also run contrary to what is found in the form statement itself, which recites that “[i]t is not a substitute for any inspections or tests and the buyer is encouraged to obtain his or her own independent professional inspections and environmental tests” (Real Property Law § 462 [2]). Finally, the court notes that eliminating the buyer’s burden would create an additional and powerful incentive to not complete the form at all in favor of giving the credit under section 465 (l),[6] which runs counter to the very idea of encouraging the use of that form.
Under the undisputed facts of this case, the plaintiff cannot make out a claim under section 465 (2) because she accepted the statement with omissions regarding the intrusion of water, which should have led her to inquire further before the contract was signed. Indeed, the court also would point out that at question 37, the seller was asked if there were any known material defects in a sump pump, commonly used to pump out water from a flooded basement; the possible answers were “yes,” “no,” “unknown,” and “n/a” (which the form identifies as “non-applicable”). The answer given was “no” which clearly implied the presence of such a functioning pump, as the question could have been answered with “nonapplicable.” This answer was therefore inconsistent with a reasonable belief that there was no water in the basement.
As a final note on the statutory claim, it should be stated that there is no provision in the law for incorporation of article 14, or any of its constituent parts, into the contract of sale, by reference or otherwise. Indeed, the statute provides that
“[njothing contained in this article or this disclosure statement is intended to prevent the parties to a contract of sale from entering into agreements of any kind or nature with respect to the physical condition of the property to be sold, including, but not limited to, agreements for the sale of real property ‘as is’.” (Real Property Law § 462 [l].)[7]
This is yet a further indication of the Legislature’s intention *1019 not to alter in their entirety rights and responsibilities that exist under the common law.
Accordingly, to the extent that the seller defendant’s motion is premised on the plaintiffs inability to make out a claim pursuant to Real Property Law § 465 (2), it is granted and any claim made thereunder is dismissed. However, because the defendant seller was required to but did not deliver a completed form, the buyer is entitled to a $500 credit, and the court therefore grants her judgment in that amount, with interest from the date she should have received that credit. Both parties have argued vigorously about the application of the statute, and under such circumstances the court may search the record on this summary judgment motion and grant judgment to the non-moving party under the law, even though a claim for the credit under section 465 (1) was not pleaded (CPLR 3212 [b]; see, Sealia v Glielmi, 200 AD2d 615 [1994]; Deborah Intl. Beauty v Quality King Distribs., 175 AD2d 791 [1991]).
The Common-Law Claim
The court cannot sustain the cause of action asserted against the defendant seller because the plaintiff has alleged common-law fraud in the inducement, in addition to a violation of Real Property Law article 14.
The plaintiff alleges that the seller intentionally failed to disclose and misled her regarding the water condition.[8] The requirements of common-law fraud are (1) a misrepresentation or an omission of material fact which was false and known to be *1020 false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury (New York Univ. v Continental Ins. Co., 87 NY2d 308, 318 [1995]; Channel Master Corp. v Aluminium Ltd. Sales, 4 NY2d 403 [1958]). Further, where the claim involves fraudulent concealment, an additional element is required, specifically, that the defendant had an affirmative duty to disclose the fact concealed (E.B. v Liberation Pubis., 7 AD3d 566, 567 [2004]; P.T. Bank Cent. Asia, NY. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 376 [2003]). In the arena of real property sales, this duty can arise where the seller took steps to actively conceal a condition he ordinarily would not have had to reveal (Jablonski v Rapalje, 14 AD3d 484 [2005], supra; Bethka v Jensen, 250 AD2d 887 [1998], supra).
As noted above, it is well established that as part of any common-law fraud the plaintiff must be able to prove that she reasonably relied on the seller’s omission (New York Univ. v Continental Ins. Co., supra), and active, intentional concealment, triggering a duty to disclose the condition complained of (Jablonski v Rapalje, supra). Upon a review of the defendant’s papers, the court finds that he has demonstrated the absence of these essential elements, and the plaintiff has been unable to introduce evidence in admissible form creating issues of fact meriting a trial with regard thereto (see, e.g., Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
The plaintiff has submitted only the affirmation of her attorney, who points to deposition transcripts and documents, which she claims indicate that the defendant took the following affirmative steps to conceal the water and mold problem in the basement: he sheetrocked, painted and carpeted the basement about a year before he sold the house; lined the wall of the basement with storage to hide walls and flooring; omitted questions on the property condition disclosure report pertaining to water problems in the basement; and failed to respond to plaintiffs face-to-face inquiries about water on the carpet in the basement at the time she took possession. None of these are sufficient to merit denial of the motion.
The first two items noted are based on no more than counsel’s speculation as to the defendant’s motives, and speculation cannot serve to raise a triable issue of fact (see, e.g., Perez v Grace Episcopal Church, 6 AD3d 596 [2004]). Finishing a basement before placing a home on the market, standing alone, could just *1021 as easily be seen as an attempt to boost the sales price than as an attempt to conceal what lies beneath. Indeed, there is no evidence in the record that the defendant had even decided to sell the house at the time he finished the basement. Similarly, no motive to conceal can be inferred from the mere fact of storage. There simply is no proof, either direct or circumstantial, that at the time undertaken these actions were done for the purpose of actively concealing the water and mold condition later found by the plaintiff buyer.
With regard to the property condition disclosure statement, it is clear that the plaintiff could not have justifiably relied on the form as assurance that no such condition existed before she signed the contract of sale, because, as discussed above, the questions about flooding, drainage and seepage were not answered, and that another response about a sump pump indicated that this device, commonly used to expel water, was present as well.
Finally, even assuming that the defendant knew he was lying to the plaintiff about the origin of the water the plaintiff noticed in the basement, such conversation took place after closing already had occurred. Those statements therefore were not material to her claim that she was induced to buy the house because of his misrepresentations.
Accordingly, the common-law claims are also dismissed.
The action against the remaining defendants is severed and continued.
Although the result of this motion may seem harsh, the court cannot change the common law in this state that still places a substantial burden on the buyer to learn everything about the property that reasonably can be learned before the purchase is made. If the burden is to be shifted to the seller any more than has occurred under Real Property Law article 14, the task is one for the Legislature.

. The remaining defendants, Envirospect, Inc. and Robert Madarasz, were sued for their alleged professional negligence in failing to report the water condition after conducting an inspection at the plaintiffs behest. It is not clear from the record before the court when such inspection occurred.

. It should be noted that the seller’s wife, identified by defendant’s counsel as Eileen Pisarz, was the person who actually filled out and signed the form. However, the record reveals, and no issue is raised by either party otherwise, that she was authorized to do so and thus functioned as her husband’s agent. Accordingly, for purposes of this motion, the court finds the form as delivered to be binding on defendant Pisarz, even though he alone is stated to be the seller. Mrs. Pisarz has not been named in this suit.

. As indicated below, the article 14 form defines this as “non-applicable.”

. Malach v Cheng Lung Chuang, 194 Misc 2d 651 (2002).

. For a discussion of the Malach case, the only reported decision of which this court is aware that examined the law in any detail, see Holtzschue, First Court Case to Interpret Property Condition Disclosure Act Holds Sellers Not Liable, 75 NY St BJ 31 (Mar./Apr. 2003).

. As Judge Straniere points out, this disincentive already exists to a large degree.

. In the present case, the form contract of sale utilized by the parties provides several clauses concerning the condition of the property, none of which help the plaintiff here and would fatally undermine a breach of contract claim based on the statement. Under paragraph 21, the “Condition of Property” provision, it is agreed that the purchaser has inspected the premises, is “thoroughly acquainted” with the property’s condition, and agrees to purchase *1019 “as is.” At paragraph 22, a merger clause provides, among other things, that the contract “has been entered into after full investigation, neither party relying upon any statements made by anyone else that are not set forth in this contract.” In paragraph 4 of the contract rider, entitled “Condition of the Premises,” the parties agreed that neither the seller nor any of his agents or representatives made any representations or warranties concerning the condition of the property, other than what is set forth in the agreement. In that regard, certain representations are made regarding the condition of the premises, but none refer to the condition that underlies this lawsuit. Finally, this paragraph provides that “this covenant shall not survive the closing of title or the delivery of possession, whichever is later.”

. There is also a claim of negligence, but, as is indicated by the allegations made in the complaint, this has to do with the preparation of the property condition disclosure statement. This clearly was made in support of her statutory claim, as the only time negligence is mentioned in the complaint is in one of the two paragraphs that specifically names that statement. In any event, all of plaintiffs arguments and evidence presented in opposition to this motion are made in support of demonstrating intentional conduct, indicating an abandonment of a discrete negligence cause of action (Dunn v Northgate Ford, Inc., 16 AD3d 875 [2005]; Genovese v Gambino, 309 AD2d 832 [2003]).