*1005 OPINION OF THE COURT
C. Stephen Hackeling, J.
The plaintiffs, Michael and Lisa Fleischer (hereafter buyers), by complaint dated July 17, 2002, commenced this action seeking: recovery of $15,000, representing the repair costs for the roof, basement and alarm system of premises they purchased, located at 27 Mill Road, Lloyd Harbor, New York, and the turnover of a $10,000 escrow established in conjunction with the sale of said premises. The defendants, Jerome and Norma Morreale (hereafter sellers), interposed an answer containing a counterclaim dated August 28, 2002.
The Undisputed Facts
It is undisputed that the parties contracted on April 29, 2002 for the Morreales to sell the above premises to the Fleischers for $1.2 million and that the deed conveyance occurred on August 19, 2002. The sellers executed and tendered a standard form New York State Real Property Condition Disclosure Statement (hereafter PCDS) prior to the parties’ execution of the contract. The sellers represented in the PCDS that the roof had “no material defects,” that the security system had “no material defects,” and that there were “no flooding, drainage or grading problems which would result in standing water on any portion of the property.” (Exhibit No. 2 in evidence.)
At the sale closing conducted on August 19, 2002, the parties executed a possession agreement which authorized the sellers to remain on the premises for five days subsequent to the date the deed was conveyed. This agreement expressly continued the warranties contained in the original contract of sale until the buyers took possession. It also created a $10,000 escrow. The buyers took possession within said five-day period, on or about August 25, 2002. A severe storm occurred during the first 72 hours of the plaintiffs’ possession revealing multiple substantial roof leaks resulting in one to four inches of flooding throughout the house basement. The alarm system was also not operational. The sellers refused the buyers’ immediate demand to take corrective action and to make repairs. The buyers subsequently paid $6,500 to repair the roof, $4,500 to install a basement flooding drainage system and $1,402 to make the security system operable.
Disputed Issues of Fact
The only relevant disputed issues involve whether the roof leaks and basement flooding condition existed at the time the *1006 buyers took possession of the premises and whether the sellers advised them that the alarm system was inoperable but could be fixed with a few minor repairs. The evidence presented to the court overwhelmingly establishes that the roof leaked and that the property had severe drainage and house flooding problems prior to the change of possession and that the sellers knew or should have known about said defects. (See exhibit No. 6 in evidence.) The court adopts the sellers’ assertion that the parties knew the alarm system was not operable/currently in use but that the buyers were led to believe it could be reactivated with a minimal expenditure.
Legal Issues Presented
(A) Did the sellers breach any of their contractual warranties concerning the condition of the premises? Ancillary to this question is can this court direct a turnover to either party of the contractually created $10,000 escrow account?
(B) Is a misrepresention of the nonexistence of house defects in the statutorily prescribed property disclosure statement a “willful failure to perform” as envisioned by Real Property Law § 465 (2)?
Discussion
Breach of Contract/Escrow Turnover:
The court will first address the plaintiffs’ first and second causes of action (asserting breach of contract). Commonly, warranties (regarding property condition) contained in contracts for the sale of residential property do not survive delivery of the deed, by reason of “merger” clauses inserted in contract riders. Such a clause may provide that any claim of fraud by the buyer is extinguished upon the closing. (See Venezia v Coldwell Banker Sammis Realty, 270 AD2d 480 [2d Dept 2000]; Cohan v Sicular, 214 AD2d 637 [2d Dept 1995].) “Although the provisions of a contract for sale of land are merged in the deed and are extinguished on closing of the title, this rule does not apply where there is clear intent evidenced by the parties that a particular provision will survive the delivery of the deed.” (91 NY Jur 2d, Real Property Sales and Exchanges § 140.) Clauses in possession agreements (executed at the time of closing) typically contain language providing that certain provisions of the contract shall survive delivery of the deed.
In the subject case, the parties stated in paragraphs 1 and 4 of the possession agreement that the sellers would give $10,000 *1007 to Stein & Stein, EC., counsel for the sellers, in order to ensure that the sellers would vacate the premises by August 26, 2002, in “vacant, broom clean and unoccupied possession.” Paragraph 6 of the parties’ possession agreement further provides the following:
“It is understood and agreed that the possession agreement shall not give rise to any warranty other than has been made in the contract of April 29, 2002, to wit: That the provisions of the contract as they relate to the condition of the premises shall remain in full force and effect and survive delivery of the deed only until such time as the seller shall deliver possession in accordance with and pursuant to this possession agreement. Upon the delivery of possession, in accordance with this possession agreement, all of said warranties and representations shall thereafter terminate and not survive. Purchasers shall have the right to inspect premises within 72 hours of August 26, 2002, or that date that the seller agrees to give possession. In the event that the seller shall give possession earlier tha[n] August 26, 2002, notice of said intent shall be provided to the purchaser by their attorneys in writing not less than 72 hours prior to seller vacating the premises.” (Emphasis added.)
Clearly, the $10,000 escrow was created solely to ensure the turnover of possession within five days of the closing date. There exists no language linking the escrow funds as security for the condition of the property. As a result, the court is compelled to dismiss the plaintiffs’ first and second causes of action seeking the return of funds held by Stein & Stein, EC., pursuant to said possession agreement, inasmuch as it is undisputed that the plaintiffs received possession of the property within five days of the closing. Additionally, this court is not jurisdictionally competent to direct the escrow turnover as such relief is equitable in nature. (See UDCA 201-213.)
Plaintiffs’ third cause of action seeking to recover for breach of contract (warranty provisions concerning the property’s condition) is likewise dismissed as the express language of paragraph 6 of the possession agreement dated August 19, 2002 vitiates the warranty upon acceptance of possession, which occurred. The plaintiffs’ argument that the language of paragraph 6 of the possession agreement gave purchasers a 72-hour “protest period” is unpersuasive. The only interpretation which *1008 would be consistent with the express instruction that the warranties “not survive” delivery of possession would be that the 72-hour period was a prepossession inspection opportunity.
Real Property Law, Article 14, § 465 (2):
Plaintiffs’ fourth cause of action seeks damages for sellers’ conduct with respect to Real Property Law § 465 (2). This statute provides that the seller of residential real property is liable to a buyer for any “actual” damages arising out of seller’s “willful failure to perform the requirements of this article.” The dis-positive issue presented is whether a purchaser can recover damages as a result of a seller’s written misrepresentation contained in the statutorily prescribed disclosure form (PCDS).
At first blush, the intent of the State Legislature to create a statutory cause of action appears obvious. Section 465 is entitled the “Remedy” section of Real Property Law article 14. It is clear that it is designated therein, and in section 467, as an additional remedy to existing common-law and statutory remedies. The relief available to a purchaser varies depending upon the seller’s election whether to complete the PCDS. The failure to disclose mandates a $500 credit to purchaser at closing. An incomplete or untruthful disclosure makes the seller liable for all of buyer’s damages arising therefrom. Section 465 (2) expressly states that “[flor such a willful failure, the seller shall be liable for the actual damages suffered by the buyer in addition to any other existing equitable or statutory remedy.”
However, two of the three reported New York cases dealing with an affirmative Real Property Law § 462 misrepresentation have held to the contrary, finding that the statute provides no remedy for intentional or negligent misrepresentations in the PCDS. (See Malach v Cheng Lung Chuang, 194 Misc 2d 651 [Civ Ct, Richmond County 2002]; see also Renkas v Sweers, 10 Misc 3d 1076[A], 2005 NY Slip Op 52247[U] [Sup Ct, Monroe County 2005].) The court’s holding in Malach is premised upon the fact that “this act provides no such specific right of action to the purchaser for a breach of the disclosure form” (Malach at 654), that the Legislature used words “MAY SUBJECT THE SELLER TO CLAIMS BY THE BUYER PRIOR TO OR AFTER THE TRANSFER OF TITLE” (id. at 657 [emphasis added], quoting Real Property Law § 462 [2]), and that the use of the words “willful failure” without further definition makes Real Property Law § 465 (2) “unclear in its meaning and therefore . . . unenforceable.” Citing to the Malach decision, the Renkas court determined that “Article 14 of the Real Property Law was *1009 not intended to establish a new cause of action” (Renkas, 2005 NY Slip Op 52247[U], *9) nor does the Property Condition Disclosure Act create a duty to disclose other than what exists under the common law. The court will address each of these decisions in an effort to clarify an unsettled area of law.
Section 465 (2) Standing to Sue
Though articulately presented, the court is not persuaded by the Malach court’s “standing” argument. The Legislature clearly expressed its intention to preserve the common law by affirmatively stating so in Real Property Law §§ 465 and 467 and by providing an opt out provision in section 465 which vitiates all statutory disclosure requirements upon the seller’s election to provide a $500 closing credit. As such, article 14 is considered an affirmative statute (as opposed to negative statute) pursuant to McKinney’s Consolidated Laws of NY, Book 1, Statutes § 34 (at 76-77), which provides:
“[W]here a remedy existed at common law for the wrong or injury against which a remedial statute is directed, if such statute provides a more enlarged or a summary or more efficient remedy for the party aggrieved, but does not in terms or by necessary implication deprive him of the remedy which existed at common law, the statutory remedy is considered as merely cumulative, and the party injured may resort to either at his election.” (Emphasis added.)
For the prestatute codification of the rule, see also Tremain v Richardson (68 NY 617 [1877]).
Absent the presentment of compelling authority to the contrary, this court would be hard-pressed to accept the proposition that no New York statute can be enforced in the courts unless it expressly mentions the party who has standing to assert it. Statutes § 34 (at 77) provides that the common law grants relief to “the party injured” and “party aggrieved,” which is consistent with the concept that all “aggrieved injured parties” have standing to seek judicial redress for statutory violations unless the Legislature specifically limits standing to a particular entity.
Disclosure Form Use of Word “May”
It is the Malach court’s assertion that it is inconsistent for the Legislature to mandate in Real Property Law § 462 that if the seller makes disclosure it “shall” make it utilizing a specific predetermined language form which itself provides that a seller *1010 “may” be liable after a transfer for a knowingly false or incomplete statement. It is conceded that the use of the word “may” instead of “shall” indicates that the Legislature acknowledges that a situation could arise where a “knowingly false statement” may not always create a claim. (Malach, 194 Misc 2d at 657.) However, a statute (Real Property Law § 462 [2]) prescribing language to be utilized on a form is clearly ancillary to the operative statute (Real Property Law § 465 [2]) which actually creates the cause of action.
The use of the word “may” in a consumer oriented form cannot possibly vitiate the legislative intent of the enabling statute if the court follows the detailed and voluminous judicial construction instructions contained in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 73 (“Avoidance of judicial legislation”); § 92 (“Legislative intent as primary consideration”); § 94 (“Intent determined from language used; natural and obvious meaning”); § 96 (“General purpose and spirit”); § 97 (“All parts to be construed together”); and § 111 (“Generally”). It is also noted that Statutes § 177 expressly states that the use of the word “shall” or “may” is not the conclusive test of the intent of the Legislature. See also Munro v State of New York (223 NY 208 [1918]) for the prestatute Court of Appeals determination of this rule.
The fact that a Real Property Law § 465 (2) claim may not be sustainable (by virtue of affirmative defenses such as mental or age infirmity; duress; “unclean hands” equitable reasons such as collusion between the parties against a third party; forgery; or the nonexistence of actual damages) does not create an undecipherable ambiguity sufficient to frustrate its legislative purpose. Clearly, it was not the Legislature’s intent to enact a nullity by vitiating the section 465 (2) remedy through the language in its ancillary form.
“What is Willful Failure”
The Malach court also criticizes and invalidates section 465 (2), stating that the statute’s prohibition against a “willful failure to perform the requirements of this article” is unclear and equivocal as to what the requirements are. (Malach, 194 Misc 2d at 658.) The Nassau County Supreme Court has opined, in the nature of dicta, a working definition of the phrase “willful failure to perform the requirements of this article” as “(1) a deliberate misstatement . . . regarding the defective condition ... (2) that would tend to assure a reasonably prudent buyer *1011 that no such condition existed, and (3) which a professional inspector might not discover.” (Gabberty v Pisarz, 10 Misc 3d 1010, 1017 [2005].) Even though Justice Roberto dismissed the Gabberty basement flooding section 465 (2) claim by declaring a nonresponsive form answer to be an election to pay $500 and to opt out of disclosure, he correctly construed the enforceability of the section 465 remedy statute utilizing a Statutes § 98 harmonizing analysis and citing to Court of Appeals authority at Matter of Albano v Kirby (36 NY2d 526 [1975]) and People ex rel. Steckler v Warden of City Prison (259 NY 430 [1932]). If this court adopts the Gabberty court harmony analysis together with all the other aforestated judicial construction requirements of McKinney’s Consolidated Law of NY, Book 1, Statutes, it must dissent from the Renkas holding that the legislative history’s reference that article 14 “does not diminish the responsibility of buyers to carefully examine the property,” establishes that the common-law doctrine of caveat emptor is still the standard for real estate transactions. (Renkas, 2005 NY Slip Op 52247[U], *9.) A judicial review of legislative history is a last resort which is appropriate only if the statute is ambiguous. The language of section 465 (2) is plain and clear on its face that it provides a “remedy” for willful misrepresentations making the “seller . . . liable for the actual damages suffered by the buyer in addition to any other existing equitable or statutory remedy.”
This court finds that the roof leaks and basement flooding were presale conditions of which the sellers were aware at the time they executed the PCDS; that sellers’ contrary written misrepresentations were knowingly false and untruthful; and that the misrepresentations did result in the buyers’ damages of $6,500 to repair the roof and $4,500 to install a basement drainage system. This establishes the first component of the Gabberty test. The court finds that the second and third components of the Gabberty court test were also factually present and proven as the buyers prudently inspected the house with a professional inspector with there being no patent indications that the sellers’ certified representations as to the roof and basement were false. Without question, the record supports a section 465 (2) cause of action.
The security system involves a different factual background. The “professional inspector might not discover” component of the Gabberty definition was not established for the alarm/ security system. Clearly, neither the plaintiffs nor their home *1012 inspector sought to activate and/or test the then nonoperating system. The first component of a “deliberate disclosure form misrepresentation” is undisputed but is qualified by the defense that the buyers were aware that the disclosure statement was inaccurate regarding this item.
Clearly, the security system claim would fail if the Gabberty definition of willful failure was adopted. However, this court does not concur with the judicial construction that grafts “a professional inspector discovery standard” onto a statute which is designed to add a supplemental remedy to the already existing common-law fraud claim. It is logical to assume that by expressly preserving the common-law fraud in the inducement claim, the Legislature intended for the statutory remedy to have a different standard. As article 14 is cast by the legislative history in the nature of a “consumer protection” statute, consumers would have little use for a new remedy (standard) which is harder to prove than the existing common-law remedy.
What is the Relaxed Statutory Standard?
There exist five elements to establishing a prima facie cause of action of common-law fraud. (See Koagel v Ryan Homes, 167 AD2d 822 [4th Dept 1990], citing Chase Manhattan Bank, N.A. v Perla, 65 AD2d 207 [4th Dept 1978].) The common law does not limit fraudulent misrepresentation claims to only those that a competent professional inspector might find. It limits liability to damages for misrepresentations of material facts which plaintiff justifiably relies on (Jablonski v Rapalje, 14 AD3d 484 [2d Dept 2005]). The substitution of a heightened “competent professional inspector” test, for a “reasonable man reliance” test, as the applicable standard for a supplemental remedy statute does not appear justifiable in a statute which on its face is cast as a strict liability provision. Instead this court will substitute only the Gabberty “reasonably prudent buyer” second element (which is established in the record) which appears to relax the common-law “reliance test.” The third element, “professional inspector discovery,” is perhaps best left for the Legislature to create.
Section 464 Disclosure Statement Amendments
The court additionally rejects the sellers’ assertion that oral statements regarding items which their disclosure statement misrepresented is a defense as the buyers did not then “rely” upon the original disclosure. Any common-law “nonjustifiable *1013 reliance upon oral misrepresentations” defense such as sustained by the Renkas court was expressly vitiated by Real Property Law § 464 which provides that all PCDS inaccuracies can only be rectified by a formal written disclosure statement amendment, when it provides as follows: “If a seller of residential real property acquires knowledge which renders materially inaccurate a property condition disclosure statement provided previously, the seller shall deliver a revised property condition disclosure statement to the buyer as soon as practicable.”
All 48 areas of inquiry provided for in Real Property Law § 462 are inherently determined to be material and significant by virtue of the fact that the Legislature designed them with particularity for disclosure. As such, the disclosure form is a statutorily detailed “integrated writing” which expressly provides only for written amendment thereof. This court is therefore precluded from delving into any common-law materiality or reliance issues raised by extraneous oral PCDS amendments. Only a formal section 464 amendment could be raised as a section 465 (2) defense to the security system misrepresentation.
Accordingly, the court awards judgment to plaintiffs against the two defendants herein, on their fourth cause of action, for the sum of $11,000, together with statutory interest from August 2002. The defendants’ counterclaim is dismissed as it was not factually established in the record.