OPINION OF THE COURT
Patrick J. McGrath, J.
*950 The plaintiff, Margaret Middleton, appeals from an order rendered, after trial, in the Small Claims Part of the Hoosick Falls Village Court (Gorman, J.), dismissing the plaintiffs cause of action based upon a claimed failure to disclose a defective condition on real property.
Both parties testified at the hearing, which took place on December 15, 2004. In addition, the plaintiff introduced documentary evidence.
It is undisputed that the plaintiff entered into a contract for the purchase of residential real estate, specifically, to buy a house from the defendants, located at 125 Johnson Hill Road in Hoosick Falls, and that said purchase occurred on August 7, 2003. As has become standard in many such contracts, it contained a clause, in paragraph 10, that the premises were being sold “as is,” without warranty to condition, and that the purchaser was agreeing to take title to the premises “as is.” Addendum C to the contract stated that the agreement was contingent upon a test of the septic system, to be performed by a qualified person at the buyer’s expense, by June 23, 2003. The record does not reflect that the purchaser obtained any such test by the date indicated. Attached to the contract was a completed property condition disclosure statement (hereinafter PCDS), as required by Real Property Law § 462 (1). In the PCDS, under the heading “Mechanical Systems and Services,” the defendants noted that the property utilized a 22-year-old septic sewage system that was last pumped in 2001. In response to the question “[a]ny known material defects?”, the defendants checked the box “no.”
At the hearing, the plaintiff alleged that she relied upon the statements contained in the PCDS regarding the sewage system and purchased the home. In October of 2003, a puddle began to form in the front yard. In February of 2004, the melting of the snow also made a puddle in the same area. In April of 2004, the plaintiff had the septic pumped. The plaintiff claimed that she hired an inspector to check the septic, who indicated the system had failed, that the entire system required replacement, and that water had been surfacing for “quite some time.” The inspector was not called as a witness, but the report was admitted as evidence. Further, the plaintiff submitted a letter from one Paul Hoag, a neighbor, which stated that he “became aware of a problem with the septic system” and had noticed various symptoms of the problem for “the last 4 or 5 years.” The letter is dated May 22, 2004. The letter was not in the form of a sworn *951 statement, and the neighbor did not testify at the hearing. The plaintiff also admitted pictures of the puddle, dated April of 2004, into evidence. The defendants denied having knowledge of any deficiencies in the septic system.
The court dismissed the plaintiffs case because the plaintiff failed to prove either the sellers’ actual or constructive knowledge of the existence of the unfavorable condition before closing.
On this appeal, the plaintiff contends that she is entitled to damages in the amount of $3,000 to repair the septic system. First, she claims that she purchased the house in reliance on the PCDS, which contained misrepresentations about the septic system. Further, that the evidence produced at trial was sufficient to prove that the sellers “knew there was an issue” regarding the sewage system, presumably before title transferred.
The defendants’ responsive papers move to dismiss the appeal, pursuant to UJCA 1703 and CPLR 5515, in that the plaintiff failed to serve the defendants with a notice of appeal. In the alternative, defendants claim that the plaintiff has failed to raise any claim that merits reversal.
The defendants’ motion to dismiss is denied. Uniform Justice Court Act § 1703 (b) (1) states that “[a]n appeal as of right from a judgment entered in a small claim . . . must be taken within thirty days of . . . service by the court of a copy of the judgment appealed from upon the appellant.” It is undisputed that the court issued a decision dated July 18, 2005, which the plaintiff acknowledged receiving on July 27, 2005. The plaintiff then filed a timely notice of appeal with the hearing court, dated August 18, 2005. Defendants’ counsel asserts that his office was never served with said notice, nor does a review of the record reveal that the plaintiff served the notice upon the defendants.
The taking of an appeal requires the dual procedure of service of the notice of appeal on the adverse party, as well as filing with the court of original jurisdiction. (CPLR 5515 [1].) However,
“[i]f an appellant either serves or files a timely notice of appeal or notice of motion for permission to appeal, but neglects through mistake or excusable neglect to do another required act within the time limited, the court ... to which the appeal is taken . . . may grant an extension of time for curing the omission.” (CPLR 5520 [a] [emphasis added].)
*952 Thus, where a notice of appeal is timely filed, as is the instant matter, the failure to serve the adverse party is not necessarily fatal. (See Peck v Ernst Bros., 81 AD2d 940, 941 [3d Dept 1981]; Gamble v Gamble, 23 AD2d 887 [2d Dept 1965]; see also Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5520:1, at 255-256.) Since this court is of the view that the plaintiff had every intention of taking an appeal, as evidenced by the filing of a timely notice with the originating court, the failure to serve the adverse party shall be deemed a mistake within the purview of CPLR 5520 (a). Although this court is empowered to grant the plaintiff an extension of time to cure the omission, to do so would be a moot remedy in light of the failed merits of the plaintiff’s claim. As this court concludes that there is no cause of action created under Real Property Law § 465 (2), and further, that the plaintiff has failed to prove a successful claim under the common law, the lower court’s decision is affirmed.
The Property Condition Disclosure Act provides that
“every seller of residential real property pursuant to a real estate purchase contract shall complete and sign a property condition disclosure statement as prescribed by subdivision two of this section and cause it, or a copy thereof, to be delivered to a buyer or buyer’s agent prior to the signing by the buyer of a binding contract of sale. A copy of the property condition disclosure statement containing the signatures of both seller and buyer shall be attached to the real estate purchase contract. Nothing contained in this article or this disclosure statement is intended to prevent the parties to a contract of sale from entering into agreements of any kind or nature with respect to the physical condition of the property to be sold, including, but not limited to, agreements for the sale of real property ‘as is’.” (Real Property Law § 462 [1].)
Enumerated in the following section are the contents of the PCDS, specifically, 48 questions to be answered by the seller, the possible answers being “yes,” “no,” “unknown” or “not applicable.” (Real Property Law § 462 [2].) The act also contains a section entitled “Remedy,” which states that,
“1. In the event a seller fails to perform the duty prescribed in this article to deliver a disclosure statement prior to the signing by the buyer of a *953 binding contract of sale, the buyer shall receive upon the transfer of title a credit of five hundred dollars against the agreed upon purchase price of the residential real property.
“2. Any seller who provides a property condition disclosure statement or provides or fails to provide a revised property condition disclosure statement shall be liable only for a willful failure to perform the requirements of this article. For such a willful failure, the seller shall be liable for the actual damages suffered by the buyer in addition to any other existing equitable or statutory remedy.” (Real Property Law § 465 [1], [2] [emphasis added].)
Finally, in the section entitled “Liability,” the statute instructs that: “Nothing contained in this article shall be construed as limiting any existing legal cause of action or remedy at law, in statute[*] or in equity.” (Real Property Law § 467.)
There are a handful of reported cases addressing the purchaser’s rights and remedies under Real Property Law article 14, namely, whether a cause of action has been created based upon an alleged misrepresentation contained in the PCDS. These decisions offer no consensus, and there is no reported Appellate Division decision on the matter. One line of cases holds that the purchaser has no cause of action based on Real Property Law article 14. Based upon a strict reading of the statute, the Richmond County Civil Court held that Real Property Law § 465 has not created a specific right of action to the purchaser for a breach of the disclosure form. (Malach v Cheng Lung Chuang, 194 Misc 2d 651 [Civ Ct, Richmond County 2002, Straniere, J.]; see also Renkas v Sweers, 10 Misc 3d 1076[A], 2005 NY Slip Op 52247[U] [Sup Ct, Monroe County 2005].) At best, the statute provides that the buyer could receive a credit of $500 against the agreed upon purchase price of the property (upon the transfer of title) if the seller failed to deliver a PCDS form. (Real Property Law § 465 [1].) As to the second prong of the remedy section, the Malach court held that the phrase “willful failure to perform the requirements of this article” was “unclear in its meaning and therefore . . . unenforceable.” (Malach, 194 Misc 2d at 658.) In further support of its holding, the court quoted the disclosure form itself, which states that “A KNOWINGLY FALSE OR INCOMPLETE STATEMENT BY THE SELLER ON THIS FORM MAY SUBJECT THE SELLER TO *954 CLAIMS BY THE BUYER PRIOR TO OR AFTER THE TRANSFER OF TITLE.” (Malach, 194 Misc 2d at 657 [emphasis added].) The court found that the use of the word “may,” a permissive term, rather than the mandatory “shall,” indicated that the Legislature did not effectively create a cause of action in this regard. (Id.)
In the absence of statutory clarity, judicial construction of the phrase “willful failure to perform the requirements of this article” was inevitable. The Nassau County Supreme Court adopted a three-tiered test that “escapes the inconsistency flowing from a dry and literal application of the language, in favor of one that meets the legislative goal[ ]” that “all constituent elements [of a statute] ... be harmonized with the general intent of the whole.” (Gabberty v Pisarz, 10 Misc 3d 1010, 1015, 1017 [Sup Ct, Nassau County 2005], citing McKinney’s Cons Laws of NY, Book 1, Statutes § 98.) The court, in the nature of dicta, opined that the phrase means
“(1) a deliberate misstatement or misstatements in a fully completed and timely delivered statement regarding the defective condition complained of (2) that would tend to assure a reasonably prudent buyer that no such condition existed, and (3) which a professional inspector might not discover upon an inspection of the premises that would meet generally accepted standards in the trade.” (Id. at 1017.)
The test was meant to alleviate the buyer from having to plead active physical concealment, which is the only circumstance under the common law that required any disclosure by the seller, without abandoning the notion that a buyer must make prudent inquiries regarding the property. (Id. at 1016.)
A recent case, most on point to the instant matter, questioned whether the purchaser could recover damages as a result of seller’s written misrepresentation contained in the PCDS. The District Court of Suffolk County determined that section 465 (2) “is plain and clear on its face that it provides a ‘remedy’ for willful misrepresentations making the ‘seller . . . liable for the actual damages suffered by the buyer in addition to any other existing equitable or statutory remedy’.” (Fleischer v Morreale, 11 Misc 3d 1004, 1011 [Suffolk Dist Ct 2006].) The court not only determined that the phrase created a cause of action, but that the statute, “on its face is cast as a strict liability provision.” (Id. at 1012.) However, the court did not fully adopt the Gabberty court’s definition of the phrase “willful failure to *955 perform the requirements of this article” in that it rejected the third prong’s “professional inspector discovery” standard in favor of the relaxed “reasonably prudent buyer” standard. (Id.) The court reasoned that “[i]t is logical to assume that by expressly preserving the common-law fraud in the inducement claim [in section 467], the Legislature intended for the statutory remedy to have a different standard” that favored the buyer, due to the consumer protection nature of the act. (Id.) The court reasoned that the substitution of a “competent professional inspector” standard was more onerous than what was required in a common-law fraud action, and could not be reconciled with a new “strict liability” provision. (Id.) As such, the court found that the standard should be one of a “reasonably prudent buyer,” leaving the “professional inspector” test for the Legislature to create. (Id.)
This court is not convinced that article 14 has successfully created a strict liability, or any cause of action for willful misrepresentations in the PCDS. The court agrees with the Malach court in that the term “willful failure to perform the requirements of this article” is, at this point, unenforceable. The requirements of the article are, beyond delivery of a completed form, never defined. As the language is ambiguous, it is proper to look to the legislative intent behind the statute. According to the legislative findings, the statute was intended to “increase clarity regarding the nature of the property and [to] provide greater certainty to contracts entered into by better informed buyers and sellers.” (L 2001, ch 456, § 1.) The law was enacted to “alert both buyers and sellers to aspects of properties which may require attention: environmental, structural, mechanical or other potential problem areas, particularly those not readily observable by a visual inspection of the property.” (Id.) Although the act required the seller to disclose information to the buyer in cases other than active concealment, the act was in no way intended to “diminish the responsibility of buyers to carefully examine the property which they intend to purchase.” (Id.) The only mention made of liability and remedy is that the act was “not intended to and does not limit existing responsibilities by a seller, buyer or agent concerning the condition of the property or potential liabilities or remedies at law, statute or in equity.” (Id.) There is nothing in the history or in the language of the statute that expounds on the elements for a new cause of action.
While it is agreed that the overall purpose of the law is to enhance consumer protection, the effort to create a harmoniz *956 ing interpretation of the statute to further that goal, as utilized in Gabberty (supra), does nothing to specify the parameters of an action, and has led courts to create their own varying definitions. (Compare Gabberty, supra, with Fleischer, supra.) While the courts are sometimes called upon to define a clause or a term, it is for the Legislature to create an entire statutory cause of action, with specificity as to what actions create liability.
An apt comparison is New York’s so-called “New Car Lemon Law,” found in General Business Law article 11-A. In this statutorily-created cause of action, specific elements, along with duties, remedies, presumptions, and affirmative defenses, are all set forth in clear detail. Manufacturers and consumers have notice concerning conduct or actions that will result in liability, the structure of an impending lawsuit, and direction on how it can be litigated. In contrast, Real Property Law § 465 (2) has created little more than confusion in “what had been a well-settled area of real property law.” (Malach, 194 Misc 2d at 658.) While it appears that the Legislature intended to alleviate the buyer’s burden under the dictates of caveat emptor, it has failed, thus far, to create a cause of action for an alleged willful misrepresentation contained in the PCDS. Real Property Law § 465 (2) “is unclear in its meaning” and is therefore “unenforceable.” (Id.)
Further, it is difficult to reconcile a cause of action against a seller who lies on the form, with Real Property Law § 462 (1), which specifically preserves the parties’ ability to enter into an “as is” contract. “As is” means that the buyer is purchasing the property “in the condition that it actually exists and not in the condition as it was represented.” (Malach v Cheng Lung Chuang, 194 Misc 2d 651, 660 [Civ Ct, Richmond County 2002].)
Even if this court were to find that a cause of action existed for an alleged misrepresentation contained in the PCDS, the proof offered at the hearing failed to prove that the sellers’ negative answer to the question of any known material defects was, in fact, false. There is simply no competent proof that the condition existed while the sellers were in the house, and no proof as to when the system failed.
This does not end the analysis, as it is abundantly clear that the act leaves open the traditional remedies of contract law and fraud. (Real Property Law § 467.) Although not specifically pleaded by the plaintiff, CPLR 3025 (c) permits the court to conform the pleadings to the proof adduced at the hearing.
In analyzing whether the plaintiff provided evidence that gave rise to a cause of action for breach of contract, the lower *957 court determined that the buyer did not prove with admissible evidence that the sellers had “actual or constructive knowledge” of the existence of the unfavorable condition before closing. The lower court found, and this court agrees, that the sole piece of evidence on this point was an unsworn letter submitted by the plaintiff, from an unproduced witness, the allegations of which were denied by the defendants.
“On a bench trial, the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court’s conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses.” (Claridge Gardens v Menotti, 160 AD2d 544, 544-545 [1st Dept 1990].)
This standard applies with greater force to judgments rendered in the Small Claims Part, which is commanded to “do substantial justice between the parties according to the rules of substantive law.” (UJCA 1804; Williams v Roper, 269 AD2d 125, 126 [1st Dept 2000], appeal dismissed 95 NY2d 898 [2000]; see also Jacobs v Facilities Dev. Corp., 118 AD2d 971, 973 [3d Dept 1986]; Van Valen v Ferraro, 114 AD2d 621, 622 [3d Dept 1985].) The hearing court chose to give greater consideration to the defendants’ denials over the unauthenticated letter of an unproduced witness. This is, essentially, a judgment of credibility, and thus, this court will not disturb the lower court’s findings on these grounds. Further, the inspection report, also submitted on behalf of an unproduced witness, does not indicate how long the water had been surfacing, and only alludes to a period of “some time.” It does not speak to the sellers’ actual or constructive knowledge.
Nor is there proof that could sustain a cause of action for fraud in the inducement. To sustain this cause of action, the plaintiff is required to prove the “representation of a material existing fact, falsity, scienter, deception and injury.” (Channel Master Corp. v Aluminium Ltd. Sales, 4 NY2d 403, 406-407 [1958].) The plaintiff failed to offer any admissible proof that the defendants, when filling out the PCDS, possessed a present intent to defraud or actual assertions from which such an intent could be inferred.
The ultimate conclusion to be reached is that the buyer entered into an “as is” contract, and there is no evidence in the record that she had the sewage system inspected prior to the deed transfer. The contract specifically stated that the agree *958 ment was contingent upon a written determination by a qualified person that the premises were free from any substantial sewer defects, which was deemed waived unless the buyer notified the sellers of a failure by June 26, 2003. There is no record evidence of any tests ever being performed prior to the contract being finalized. As stated in the statute, the PCDS is not a warranty, nor is it a substitute for inspections and tests. (Real Property Law § 462 [1].)
A small claims action may only be appealed “on the sole grounds that substantial justice has not been done between the parties according to the rules and principles of substantive law.” (UJCA 1807.) The above statute has been interpreted to mean that a small claims decision will stand unless, “a deviation from substantive law is readily apparent and the court’s determination is clearly erroneous.” (Rothermel v Ermiger, 161 AD2d 1016, 1017 [3d Dept 1990].)
This court finds that the conclusions and holding of the trial court are in conformance with the rules and principles of substantive law and comport with the goal of a small claims action, to do “substantial justice” without being bound “by statutory provisions or rules of practice, procedure, pleading or evidence.” (UJCA 1804; see also UJCA 1807; Blair v Five Points Shopping Plaza, 51 AD2d 167, 168-169 [3d Dept 1976].) “Although the result of this [decision] may seem harsh, the court cannot change the common law in this state that still places a substantial burden on the buyer to learn everything about the property that reasonably can be learned before the purchase is made.” (Gabberty v Pisarz, 10 Misc 3d 1010, 1021 [Sup Ct, Nassau County 2005].) The trial court’s decision is affirmed.

 The court is not aware of any other statutory remedy.